UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DIXON, JR.,

       Plaintiff,                                      Civil No. 02-74476
                                                           Hon. John Feikens

       v.

ALBERTO GONZALEZ, in his capacity as
Attorney General of the United States of
America,

       Defendant.

_____/

**OPINION AND ORDER**

Plaintiff brings a cause of action against the U.S. Attorney General.[1] Plaintiff alleges that his former supervisor at the FBI discriminated against Plaintiff in retaliation for Plaintiff's complaints that this supervisor treated Plaintiff in a racially discriminatory manner with respect to the discharge of Plaintiff's duties for a particular FBI program. This case comes to this Court on remand from the Sixth Circuit Court of Appeals. That court reversed and remanded this Court's dismissal of Plaintiff's claim under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e)) ("Title VII").[2] Defendant renews his motion to dismiss Plaintiff's cause of action or

---

[1] Plaintiff brought his case against the former U.S. Attorney General, however, pursuant to Fed. R. Civ. P. 25(d)(1) I substitute Attorney General Alberto Gonzalez for John Ashcroft as a Defendant in this action.
    On July 14, 2005, Plaintiff stipulated that he was dropping all his claims against Robert S. Mueller, the Director of the FBI. (Tr. Jul. 14, 2005.)

[2] Plaintiff believes that the Sixth Circuit remanded both Plaintiff's discrimination and retaliation claims to this Court. (Pl.'s Resp. at 3.) However, Plaintiff is wrong. The Sixth Circuit stated that it was only reviewing "Dixon's Title VII retaliation claim." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004). Therefore, Plaintiff's arguments regarding his

for summary judgment. For the reasons stated below, I GRANT Defendant's motion for summary judgment, pursuant to Fed. R. Civ. P. 56.

## I. FACTUAL BACKGROUND

Plaintiff, James Dixon Jr., is an African American male who from 1978 to 1988 worked as a Special Agent for the FBI in Detroit. (Def.'s Renewed Mot. at 3; citing Ex. 15 (Pl.'s Dep.) at 8, 18-20.)

From November 1981 to February 1982, Assistant Special Agent in Charge ("ASAC") Robert Reutter supervised the Detroit FBI's Applicant Program. Id. at 7. Plaintiff and Special Agent Henry Glaspie, an African American male, staffed this program, which was responsible for recruiting and interviewing applicants for employment with the FBI. Id. at 7.

In 1981, Supervisory Special Agent John Anthony, Special Agent Robert Nelson and Dixon sat on an interview panel where Dixon was responsible for submitting the panel's opinion of the interviewee. (Def.'s Renewed Mot. at 3.) Anthony and Nelson claim that the panel discussed the results of the applicant's interview and the panel decided to reject the applicant. Id. at 4; citing Ex. 7 (Anthony's Tr.) at 1, and Ex. 8 (Nelson's Tr.) at 1. They also claim that without Anthony or Nelson's approval Dixon inappropriately changed the panel's result to an acceptance. Id. at 4; citing Ex. 7 at 1, and Ex. 8 at 1. However, Dixon denies that he ever altered an applicant's score. (Def.'s Renewed Mot. at Ex 15 (Dixon's Dep.) at 58-9.)

In December 1981, Dixon claims that he complained to the Special Agent in Charge ("SAC"), Wayne Davis, that Reutter treated Dixon and Glaspie differently than non-black

---

discrimination claim are moot. Oddly, Plaintiff also raises a conspiracy claim against Defendant. Id. at 11. This conspiracy claim is not before this Court.

employees. (Def.'s Renewed Mot. at 7.) In February 1982, Dixon claims that Davis transferred the Applicant Program's supervision from Reutter to Davis as a result of Dixon's complaints. (Def.'s Renewed Mot. at 3; citing Ex. 15 (Pl.'s Dep.) at 8, 18-20.) In April 1988, Dixon voluntarily resigned from his position at the FBI. (Def.'s Renewed Mot. at 3; citing Ex. 15 (Pl.'s Dep.) at 20.)

In May of 1991, Plaintiff reapplied for reinstatement with the FBI. Id. at 3; citing Ex. 17 (Tr. EEOC Proceedings) at 39. On March 6, 1992, Reutter, who had then been promoted to SAC of the FBI's Philadelphia Division, responded to an inquiry regarding Dixon's reinstatement. Id. at 4. Reutter recommended against reinstatement. Id. at Ex. 9 (Memo 3/6/92) at 2. Reutter recounted the incident where the two agents accused Dixon of changing the interview panel's score for an applicant. Id. at Ex. 9 at 2. Reutter also noted that Dixon and another agent complained to the SAC when Reutter asked these two agents to provide him with weekly schedules. Id. at Ex. 9 at 2.

On March 26, 1992, Administrative Services Division ("ASD") Analyst Wendy Strickland recommended that the FBI deny Dixon's request for reinstatement based upon the "the results of his updated background investigation, specifically the comments of former supervisors and co-workers." Id. at Ex. 11 (Memo 3/26/92) at 1, 2. ASD Assistant Director Weldon Kennedy made the final determination to deny Dixon's reinstatement. Id. at 5. Dixon did not receive the FBI's April 14, 1992, denial letter until 1994 when he contacted the FBI regarding his application's status. Id. at 6; citing Ex. 15 (Dixon's Dep.) at 41-42. Dixon then submitted a request to the FBI under the Freedom of Information Act for a copy of his personnel file. (Def.'s Renewed Mot. at Ex. 9 at 6; citing Ex. 15 (Dixon's Dep.) at 42-43.) Near the end of

3

May 1997, Dixon received his personnel file. Id. at Ex. 15 at 60.

**B.  Procedural History**

On July 8, 1997, Dixon contacted the Equal Employment Opportunity ("EEO") commission alleging that the FBI's denial was based on Anthony and Reutter's discriminatory comments. Id. at 6.  On August 11, 1997, an EEO counselor informed Dixon of his right to file an EEO complaint of discrimination. Id. at Ex. 13 (EEO Dixon Compl.) at 6.  On August 20, 1997, Dixon filed an EEO complaint claiming that the FBI's denial of Dixon's reinstatement was discriminatory. Id. at Ex. 14 (EEO Compl.) at 1.  Dixon complained about race discrimination but not retaliation. Id. at Ex. 14 at 1. However, in an attached statement, Dixon stated that "Reutter discriminated against me [...] because the Applicant Program was removed from his direct supervision because of continued harassment." Id. at Ex. 14 at 2.

An EEOC administrative judge heard Dixon's case and recommended finding that the FBI discriminated against Dixon on the basis of race. Id. at 7; citing Ex. 17-21 (Hr'g Tr.) at 1. On October 4, 2001, the FBI rejected the administrative judge's decision and issued a final order finding no discrimination. Id. at Ex. 22 (Dept. of Justice Order) at 37.  Additionally, the FBI appealed to the EEOC's Office of Federal Operations ("OFO"). Id. at Ex. 22 at 37.  On August 15, 2002, the OFO issued a decision affirming the FBI's finding that there had been no discrimination. Id. at Ex. 23 (OFO's Decision) at 7.

On November 12, 2002, Plaintiff filed a complaint in this Court.[3] Id. at Ex. 1 (Pl.'s Compl.).  On March 12, 2003, this Court entered an order granting Defendant's motion to

---

[3] Plaintiff raised four claims: (i) Title VII retaliation; (ii) Fourteenth Amendment due process; (iii) defamation; and (iv) injurious falsehood.  (Pl.'s Compl.)

4

dismiss and/or for summary judgment on all of Plaintiff's claims.  <u>Dixon v. Ashcroft</u>, No. 02-74476, 2003 WL 1203340 (E.D. Mich. Mar. 12, 2003) (opinion and order granting Defendants' motion to dismiss for lack of subject matter jurisdiction); <u>overruled by</u> <u>Dixon v. Ashcroft</u>, 392 F.3d 212 (6th Cir. 2004).  On December 16, 2004, the Sixth Circuit Court of Appeals reversed this Court's opinion and order with respect to only Dixon's retaliation claim.  <u>Dixon v. Ashcroft</u>, 392 F.3d 212 (6th Cir. 2004).

## II. ANALYSIS

Defendant asserts that this Court should grant its motion to dismiss and/or for summary judgment on the grounds that: (i) Dixon failed to seek EEO counseling; or (ii) there is no genuine issue of material fact relative to Plaintiff's claim.

### A. Motion to Dismiss Standard

A party is entitled to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.  A motion to dismiss may be granted under Fed. R. Civ. P. 12(b)(6), "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In reviewing the motion, courts must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." <u>Ziegler v. IBP Hog Mkt., Inc.</u>, 249 F.3d 509, 512 (6th Cir. 2001).

### B. Plaintiff's Failure to Timely Seek EEO Counseling

Defendant argues that because Plaintiff failed to timely seek EEO counseling, this Court should dismiss Plaintiff's retaliation claim because, as they correctly state, this Court does not

have jurisdiction unless the administrative process is exhausted. (Def.'s Renewed Mot. at 11.) Plaintiff responds that the FBI's failure to provide Plaintiff with Plaintiff's personnel records tolled the deadline for Plaintiff to seek EEO counseling. (Pl.'s Resp. at 5.)

A plaintiff, alleging that an agency engaged in race discrimination "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1); see Brown v. Gen. Serv. Admin., 425 U.S. 820, 833 (1976). A court may properly dismiss a Title VII claim where a plaintiff fails to bring his claim to the attention of an EEO counselor within the statutory period. Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991).

The 45-day limitations periods starts to run on "the date on which the alleged discriminatory act [...] was communicated to the plaintiff." Amini v. Oberlin College, 259 F.3d 493, 499 (6th Cir. 2001). Defendant calculates that in 1994 Plaintiff discovered that Defendant denied his request for reinstatement. (Def.'s Renewed mot. at 11.) Defendant then states that Plaintiff did not seek EEO counseling until July 8, 1997, and therefore, more than 45 days lapsed. Id. at 11; citing Ex. 13 (EEO Counseling report) at 1.

Plaintiff's response is confused and inappropriately mischaracterizes of a case. Plaintiff argues that the 45 day limitations period does not begin until Plaintiff knew of facts that support a charge of discrimination. (Pl.'s Resp at 6; citing Sawchik v. Du Pont, 783 F.2d 635 (6th Cir. 1986).) Plaintiff claims that equitable tolling forestalls the beginning of this 45 day limitation period until Plaintiff can determine whether an adverse employment action is a discriminatory action. (Pl.'s Resp. at 6.) Plaintiff's mode of analysis is incorrect, the Sixth Circuit clearly stated:

6

> By arguing that the limitations period for his Title VII [...] claims should not begin to run until the facts supporting a charge of discrimination become apparent to a reasonable person, [the plaintiff] has confused the difference between the accrual of his [limitations period] and the equitable tolling of that limitations period.

Amini, 259 F.3d at 499.

### 1. *Equitable Tolling*

The Supreme Court held that Title VII's exhaustion requirements are not jurisdictional prerequisites, and therefore, they are subject to waiver, estoppel and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

The Sixth Circuit explains that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500. The Sixth Circuit articulated five factors that a court should consider to determine whether equitable tolling should apply. Steiner v. Henderson, 354 F.3d 432, 435 (6th Cir. 2003). These factors are:

> (1) whether the plaintiff had actual notice of the time restraint; (2) whether [he] had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing [his] rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of the plaintiff's ignorance of the time constraint.

Id. at 436. "Prejudice may only be considered if other factors of the test are met and therefore can only weigh in the government's favor." Dunlap v. United States, 250 F.3d 1001, 1009 (6th Cir. 2001).

Surprisingly, Plaintiff does not attempt to demonstrate how his case relates to these five factors. Plaintiff actually avoids any equitable tolling analysis and relies solely on his argument that the period to seek EEO counseling did not expire before Dixon sought EEO assistance. (Pl.'s Resp. at 8.) Plaintiff does not elaborate on these factors and explain whether Plaintiff had notice, either actual or constructive, of the time constraints.

7

Defendant demonstrates that Plaintiff had actual and constructive knowledge of the time constraints because of various notifications, presentations, programs and conferences that existed within the FBI during Plaintiff's tenure working for the bureau. (Def.'s Reply at 3; citing Ex. 25 (Brown's Dec.) ¶¶ 4-5; Ex. 26 (Meschke's Dec.) ¶¶ 2-6; Ex. 27 (Famous' Dec.) ¶¶ 2-3.) Defendant also makes a convincing argument that equitable tolling will prejudice Defendant because Plaintiff's lag in contacting the EEO counselor has hindered the witnesses' ability to remember what are now exceptionally old events. (Def.'s Reply at 5.)

However, I hold that equitable tolling applies to defer the beginning of the limitations period. The Sixth Circuit found that although Dixon failed to correct to the EEOC Officer's formulation of his claim, Dixon's claim should proceed because Dixon was not represented by counsel in filing his EEOC Complaint. Dixon v. Ashcroft, 392 F.3d 212, 219 (6th Cir. 2004). Given that the Sixth Circuit held that Dixon's case is entitled to proceed despite his failure to correct the Officer's formulation of his claim, I hold that the same facts are sufficient to toll the 45-day limitations period regarding EEOC counseling.

Furthermore, I also note that much of Plaintiff's delay was due to the FBI's lag in delivering Plaintiff's personnel file to him. Immediately after the FBI told Plaintiff that his request for reinstatement had been denied Plaintiff requested his personnel file. (Def.'s Renewed Mot. at Ex. 17 (Tr. EEOC Proceedings) at 77. Yet, Plaintiff did not receive his personnel file until May of 1997. Id. at Ex. 17 at 77. In September of 1997, more than 45 days later, Plaintiff sought a counseling report. Id. at Ex. 13 (EEOC Counseling Report) at 2.

In light of the Sixth Circuit's holding, I hold that equitable tolling applies to permit Plaintiff's claim to proceed despite Plaintiff's delay in seeking EEOC counseling.

8

**D. Title VII Retaliation Claim**

### *1. Motion for Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted), Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001).

The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). For a claim to survive a motion for summary judgment, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has some discretion to determine whether the respondent's claim is plausible. Betkerur v. Aultman Hosp. Ass'n, 78 F.3d 1079, 1087 (6th Cir. 1996). See also, Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

### *2. Title VII Retaliation Standard*

The elements of a prima facie case of retaliation include: "(1) that [the plaintiff] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between

the protected activity and the adverse employment action." Johnson v. U.S. Dept. of Health and Human Serv., 30 F.3d 45, 47 (6th Cir. 1994). To establish the causation element Plaintiff must show that his participation in a protected activity was a "significant factor," contributing to his employer's adverse employment action. Polk v. Yellow Freight System, Inc., 801 F.2d 190, 199 (6th Cir. 1986).

### *3. Analysis of Retaliation Claim*

Plaintiff fails to show the last element of a prima facie case, the causation between the protected activity and the adverse employment action. Johnson, 30 F.3d at 47. Plaintiff claims that in late 1981 or early 1982 he complained that Reutter allegedly treated Plaintiff in a racially discriminatory manner with respect to the discharge of Plaintiff's duties in the Applicant Program. (Pl.'s Resp. at 9; Def.'s Renewed Mot. at 14.) Plaintiff alleges that he complained to SAC Davis and this caused Davis, in February of 1982, to reassign supervision of the Applicant Program from Reutter to himself. (Def.'s Renewed Mot. at 14.) Plaintiff alleges that in 1992, Reutter retaliated by providing the FBI with a recommendation that Plaintiff's reinstatement be denied. (Pl.'s Resp. at 13.)

Where there is a prolonged period between the protected activity and the adverse employment action, there is no temporal nexus to establish that the protected activity resulted in the adverse employment action. See Timm v. Wright State Univ., 375 F.3d 418, 423 (6th Cir. 2004) ("Eight months is a long period of time for an employer to wait to retaliate against an employee with a termination notice [...]."); Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999) (the plaintiff could not demonstrate a temporal nexus between filing an OCRC and EEOC complaints and disciplinary actions which occurred two to five months afterwards); Cooper v.

10

City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) (holding that the employer's discharge of the plaintiff four months after the plaintiff filed a discrimination claim is insufficient to establish a prima facie case of retaliatory discharge). In the case at hand, there was a ten year lapse between the protected activity, occurring in 1982, and the alleged adverse employment action which occurred in 1992. Given this time delay, Plaintiff failed to demonstrate that the temporal proximity of the two events as evidence of a causal link. Plaintiff offers no other evidence that demonstrates that his participation in a protected activity was a significant factor contributing to the adverse employment action.

Plaintiff fails to present sufficient facts to support the fourth prong causal link of a Title VII retaliation prima facie case. Therefore, I GRANT Defendant's motion with respect to Plaintiff's retaliation claim

### III. CONCLUSION

I GRANT Defendant's motion for summary judgment with respect to Plaintiff's Title VII claim because Plaintiff is unable to demonstrate the fourth prong of a prima facie case of retaliation.

Date:  July 18, 2005                                   S/John Feikens

                                                       United States District Judge

| Proof of Service |
|---|
| I hereby certify that the foregoing order was served on the attorneys/parties of record on July 18, 2005, by U.S. first class mail or electronic means. |
| S/Carol Cohron<br>Case Manager |